IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT JARACZEWSKI and JAS WHITNEY, individually and on behalf of those similarly situated,<br>                Plaintiffs,<br><br>        v.<br><br>EQUITY NATIONAL TITLE & CLOSING SERVICES d/b/a SECURE COLLATERAL, et al.,<br>                Defendants. | C.A. No. 23-274 Erie<br><br>District Judge Susan Paradise Baxter |

## MEMORANDUM OPINION

### I. INTRODUCTION

#### A. Relevant Procedural Background

Plaintiffs Robert Jaraczewski ("Jaraczewski") and Jas Whitney ("Whitney") (collectively referred to as "Plaintiffs"), filed a putative class action complaint on behalf of themselves and all others similarly situated, against Defendants Equity National Title & Closing Services d/b/a Collateral Services ("Equity National") and its President, James O'Donnell ("O'Donnell"). The complaint challenges Equity's alleged practice of charging and collecting notary fees in excess of the fees a notary public is allowed to charge under applicable Pennsylvania law. In particular, Plaintiffs assert three counts: Count I – violation of Pennsylvania's Revised Uniform Law on Notarial Acts, 57 Pa. C.S. § 301, *et seq.* ("RULONA"); Count II – unjust enrichment; and Count III – violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 75 Pa. C.S. §§ 201, *et seq.* ("UTPCPL").

1

Presently pending before the Court is Defendants' motion to dismiss the complaint and/or motion to strike class action allegations [ECF No. 11]. Plaintiffs have filed a brief in opposition to Defendants' motion [ECF No. 19], and Defendants have filed a reply thereto [ECF No. 25]. This matter is now ripe for consideration.

### **B.** **Plaintiffs' Allegations**

On May 24, 2022, Plaintiffs refinanced the mortgage of their residential real estate located in Erie, Pennsylvania. (ECF No. 1, at ¶ 18). As part of the closing on the mortgage refinance, Plaintiffs were given a Closing Disclosure that itemized the closing costs, which included an entry showing that Plaintiffs were charged and paid for a notary fee of $125.00. (Id.). Plaintiffs allege that the only notarial service performed by Equity National's notary public was the acknowledgement of each of their signatures on both the mortgage and a signature affidavit. (Id. at ¶¶ 20-21). Plaintiffs allege further that Equity National has "a company policy of overcharging, collecting, and receiving fees for notary public services in excess of the fees fixed by the Secretary of the Commonwealth of Pennsylvania." (Id. at ¶ 22).

According to Plaintiffs, Defendants "by their conduct" led Plaintiffs to "assume the $125 notary fee was bona fide and proper," and that this was a "misrepresentation." (Id. at ¶¶ 24, 28). Plaintiffs paid the $125 notary fee without objection, thereby relying on Defendants' alleged misrepresentation regarding the propriety of the fee. (Id. at ¶ 31). Plaintiffs allege that "a notary public is statutorily barred from charging more than $ 5.00 for notarizing a signature" and that "Equity National and its notary violated the statute by overcharging Plaintiffs, at a minimum, by $105.00." (Id. at ¶ 34). Consequently, Plaintiffs "estimate that, at a minimum, Equity National overcharged buyers of residential real estate by at least $105 in transactions involving two

borrowers or buyers and by at least $115 in those involving one borrower or buyer." (Id. at ¶ 36). Thus, Plaintiffs seek to represent a plaintiff class of:

> All persons who purchased, sold, or refinanced residential real estate in the State of Pennsylvania within, at a minimum, six years prior to and including the date of filing of this [action] and who were charged by Equity National and paid notary fees to Equity National in connection with such purchase, sale or refinance that were in excess of the fees fixed by the Secretary of the Commonwealth of Pennsylvania ("Class").

(Id. at ¶ 40).

## II. DISCUSSION

### A. Private Right of Action Under RULONA

At Count I of their complaint, Plaintiffs claim that Defendants violated RULONA by "charging a fee for notarial acts higher than the statutory maximum" of $ 5.00 per signature. (ECF No. 1, at ¶¶ 57-58). Defendants move to dismiss this claim, arguing that RULONA does not provide for a private right of action.

In 2013, RULONA was enacted to replace Pennsylvania's now-repealed Notary Public Law, 57 Pa. C.S. § 147, *et seq.*, which "[did] not provide for a private right of action." Becker v. Chicago Title Ins. Co., 2004 WL 228672, at *10 (E.D. Pa. Feb. 4, 2004). The current Act specifies which acts are authorized and prohibited by Pennsylvania notarial officers. 57 Pa. C.S. § 304. In particular, the Act grants certain authority to the Pennsylvania Department of State, including: (1) the power to investigate and penalize notarial misconduct, and (2) the power to create a schedule of maximum fees that notaries may charge for their services. 57 Pa. C.S. §§ 323 and 329, respectively. In addition, the Act contains the following provision at Section 323(c), which allegedly forms the basis of Plaintiffs' private cause of action:

> Other remedies – The authority of the department [of state] under this section does not prevent a person from seeking and obtaining other criminal or civil remedies provided by law.

3

57 Pa. C.S. § 323(c).

Until recently, the question of whether the foregoing provision gives private individuals the right to bring suit for alleged violations of RULONA was one of first impression within the Third Circuit. This is no longer the case, as our sister courts in the Eastern and Middle Districts of Pennsylvania have considered the issue in three cases decided within the past six months. See Ortiz v. Keystone Premier Settlement Servs. LLC, 2024 WL 3522036 (M.D. Pa. July 23, 2024); Smith v. Radian Settlement Servs., Inc., 2024 WL 666178 (E.D. Pa. Feb. 16, 2024); Seplow v. Closing Pro, Inc., ___ F.Supp.3d ___, 2024 WL 649260 (E.D. Pa. Feb. 15, 2024). In each of these cases, the court reached the conclusion that RULONA does not afford a private right of action.

In Seplow, the first case to consider the issue, the Eastern District Court observed that "[u]nder a natural reading, [Section 323(c)] provides only that the Department of State's enforcement powers under [RULONA] are not exclusive" and, "[i]f anything,… supports a conclusion that private individuals seeking to enforce provisions of the statute must look to remedies provided by *other* laws, especially because all specific remedies and powers it enumerates are explicitly reserved to the Department of State." Seplow, 2024 WL 649260, at *2. The court found further support for this observation from the following drafters' explanatory comment, which "omits any suggestion of a private right of action through subsection (c):"

> Subsection (c) provides that the fact that a commissioning officer or agency has the authority to deny, refuse to renew, suspend, revoke or impose a condition on a commission **does not prevent additional relief provided by law. Either the commissioning officer or agency or a person aggrieved by the action of a notary public may seek appropriate relief, whether the relief is civil or criminal.**

4

Id. (emphasis in original). Thus, the court ultimately concluded that "there is no evidence that the Pennsylvania General Assembly meant to imply a private right of action under [RULONA]," and dismissed the plaintiffs' attempt to state a private cause of action. Id. at *3.

In Smith, the Eastern District Court's analysis included application of the Pennsylvania Supreme Court's three-prong test to determine whether a statute creates an implied private cause of action: "'(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.'" Smith, 2024 WL 666178, at *2, quoting Schappell v. Motorists Mut. Ins. Co., 934 A.2d 1184, 1189 (Pa. 2007) (citation omitted). After noting that the second factor regarding legislative intent "has been recognized as the central inquiry of the analysis," Id. (internal quotations and citations omitted), the court did not find "any indication that the Pennsylvania General Assembly intended a private right of action" under RULONA. Id. In addition, the court concluded that the first factor of Pennsylvania's three-prong test also weighed against finding a private right of action because neither the plaintiffs, nor the class they purportedly represented, were those "for whose especial benefit the statute was enacted." Id. at *3. Rather, the court found that RULONA "focuses entirely on the regulated entities, and empowers only the Pennsylvania Department of State with the authority to enforce the statute." Id. Thus, the Smith court dismissed the plaintiffs' purported private cause of action.

Finally, in Ortiz, the Middle District Court provided a more expansive application of Pennsylvania's three-prong test. Initially, the court reiterated and essentially adopted the Eastern District Court's finding in Seplow that the legislative intent factor weighs against implying a

5

private cause of action under RULONA. Ortiz, 2024 WL 3522036, at *4, citing Seplow, 2024 WL 649260, at **2-3. Then, the court cited Smith in finding that "the first factor weighs against implying a private cause of action because [RULONA's] text ... focuses on the regulated entities, rather than the benefitted class." Id. at *5, citing Smith, 2024 WL 666178, at *3. And finally, the court went further and found that the third factor also weighed against implying a private right of action, finding that "the fact that the statute includes alternative remedies and reserves enforcement power for the Department of State suggests that it would be consistent with the legislative scheme for plaintiffs to rely on other causes of action and remedies for [RULONA] violations." Id., citing Smith, 2024 WL 666178, at *2.

This Court agrees with and adopts the reasoning of the foregoing decisions and likewise finds that no private right of action exists under RULONA. Accordingly, Count I of the complaint will be dismissed.

**B.    Unjust Enrichment**

At Count II of the complaint, Plaintiffs claim that "Equity National was unjustly enriched by collecting more money for its services and services of notaries public it employed than was statutorily entitled." (ECF No. 1, at ¶ 65).

Pennsylvania defines unjust enrichment as "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." Roethlein v. Portnoff L. Assocs., Ltd., 81 A.3d 816, 825 n.8 (Pa. 2013). To prevail on an unjust enrichment claim, a plaintiff must show that: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant received the benefit, and (3) the defendant accepted the benefit under circumstances that make it inequitable

6

for the defendant to retain the benefit without paying value for it. <u>Karden Constr. Servs., Inc. v. D'Amico</u>, 219 A.3d 619, 628 (Pa. Super. Ct. 2019) (citations omitted).

Defendants have moved to dismiss this claim, arguing that "Unjust enrichment is not appropriate in circumstances where a written or express contract exists between the parties" and, thus, "the existence of a valid written contract … disqualifie[s] [Plaintiffs'] unjust enrichment claim as a matter of law." (ECF No. 12, at pp. 10-11). However, Defendants' recitation of Pennsylvania law in this regard is too narrow.

"Unjust enrichment claims under Pennsylvania law appear to fall into one of two categories: (1) a quasi-contract theory of liability, in which case the unjust enrichment claim is brought as an alternative to a breach of contract claim; or (2) a theory based on unlawful or improper conduct established by an underlying claim, such as fraud, in which case the unjust enrichment claim is a companion to the underlying claim." <u>Whitaker v. Herr Foods, Inc.</u>, 198 F.Supp.3d 476, 492 (E.D. Pa. 2016) (citations omitted).

An unjust enrichment claim based on the first theory of quasi-contract may be pled as an alternative to a breach of contract claim. <u>Lugo v. Farmers Pride, Inc.</u>, 967 A.2d 963, 970 n. 5 (Pa. Super. 2009). However, such a theory "does not apply where a written or express contract exists. <u>Lackner v. Glosser</u>, 892 A.2d 21, 34 (Pa. Super. 2006), <u>citing</u> <u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203 (Pa. Super. 1999). This is the apparent basis of Defendants' motion to dismiss.[1]

---

[1] In support of their motion to dismiss Plaintiffs' unjust enrichment claim Defendants place a great deal of emphasis on <u>Trippichio v. UPS Store, Inc.</u>, 2023 WL 3182915 (D.N.J. Apr. 30, 2023), where the court dismissed the plaintiff's unjust enrichment claim against the defendant for overcharging of notary fees under the New Jersey equivalent of RULONA, reasoning that "[e]ven assuming plaintiff paid defendants in excess of the statutory maximum for notarial services, plaintiff's payment was part of a transaction in which the defendants provided a service at an agreed upon price – that is, each party received their expected benefit." <u>Id</u>. at *9. However, <u>Tripicchio</u> is inapplicable here because, unlike Pennsylvania, New Jersey law only recognizes unjust enrichment based on a quasi-contract theory. <u>Id</u>.

7

Under the second theory, however, an unjust enrichment claim may be pled as a companion, not an alternative, to a claim of unlawful or improper conduct as defined by law—e.g., a tort claim. "When unjust enrichment is pled as a companion, not an alternative, to an underlying tort claim and is established through improper conduct, the existence of a written contract does not render recovery unavailable. Ortiz, 2024 WL 3522036, at *6, citing Whitaker, 198 F.Supp.3d at 492-93. "'In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)." Whitaker, 198 F.Supp.3d at 493, quoting Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 936 (3d Cir.1999). Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, "the unjust enrichment claim will rise or fall with the underlying claim." Id. "In other words, unlike the quasi-contract theory of unjust enrichment, which acts as an equitable stand-in for a failed breach of contract claim, an unjust enrichment claim based on wrongful conduct cannot stand alone as a substitute for the failed tort claim." Id. (citations omitted).

Here, Plaintiffs' claim of unjust enrichment is based on the same unlawful or improper conduct as their consumer protection claim at Count III of the complaint. "The facts that support a UTPCPL claim – deceptive overcharging for notary services – separately suffice as the basis for an unjust enrichment claim." Seplow, 2024 WL 649260, at *13. Thus, if the Court finds that Plaintiffs' UTPCPL claim is viable, their unjust enrichment claim will survive dismissal as well.[2]

---

[2] This is true for Plaintiffs' unjust enrichment claim against Defendant O'Donnell as well. The complaint alleges that O'Donnell, as company president, "personally and actively participated in the establishment of a company policy of charging a fee for notary public service higher than the statutory maximum and, therefore, [] is individually liable for damages to all members of the Class caused by Equity National's unjust collection of excessive fees...." (ECF No. 1, at ¶ 66). This Court is in agreement with the Eastern District Court in Seplow, which found the identical

### C. Violation of UTPCPL

At Count III of their complaint, Plaintiffs claim, *inter alia*, that Equity National violated the UTPCPL "by charging the members of the Class excessive notary fees during the purchase, sale or refinance of residential real estate in Pennsylvania," because "[t]he overcharging of notarial fees is a deceptive act or practice in the conduct of trade or commerce" under the UTPCPL. (ECF No. 1 at ¶¶ 68, 70). Plaintiffs claim further that Defendant O'Donnell "is individually liable for damages to all members of the Class to whom he participated with Equity National in charging excessive fees." (Id. at ¶ 71).

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004); accord Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008). "For pleading purposes, the complaint must establish that, had the plaintiff known of the deceptive conduct, he would have acted differently." Seplow, 2024 WL 649260, at *5, citing Hunt, 538 F.3d at 227. As such, "a plaintiff alleging violations of the [UTPCPL] must prove justifiable reliance." Hunt, 538 F.3d at 224. Defendants contend that Plaintiff has failed to do so and, thus, their UTPCPL claim should be dismissed. The Court disagrees.

Plaintiffs have alleged that Defendants "by their conduct [led] [Plaintiffs] to assume the $125 notary fee was bona fide and proper," Plaintiffs "relied on Defendants to, and assumed Defendants would, follow Pennsylvania law in providing notarial services," and Plaintiffs "paid the $125 notary fee without objection and thereby relied on Defendants' misrepresentation."

---

allegations against the defendant's president in that case to be sufficient to state a claim for unjust enrichment at the pleading stage. Seplow, 2024 WL 649260, at *13 n.8, citing Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa. 1983) ("[A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor ....") (citations omitted).

9

(ECF No. 1, at ¶¶ 28-30). In Seplow, these precise allegations were found to be "plausible and suffic[ient] to show justifiable reliance for purposes of the UTPCPL." Seplow, 2024 WL 649260, at *17 (citation omitted); see also Ortiz, 2024 WL 3522036, at *9 (finding substantially similar allegations "are sufficient … to meet his burden at this [pleading] stage of the litigation as to" the plaintiff's UTPCPL claim). The same holds true here.

Thus, the Court finds that Plaintiff has sufficiently pled a UTPCPL claim and will allow the claim to proceed beyond the pleading stage.[3] As a result, for the reasons stated earlier, Plaintiffs' unjust enrichment claim will also be allowed to survive dismissal as well.

### D.   Motion to Strike Class Action Allegations

In the alternative, Defendants have moved to strike Plaintiffs' class action allegations, arguing that "the fact-specific and individualized inquiries required to properly adjudicate Plaintiffs' claims are not suitable for class treatment under the Federal Rules of Civil Procedure." (ECF No. 12, at p.16). Specifically, Defendants contend that Plaintiffs' claims cannot be maintained as a class action "because they require individualized inquiries into the minute transactions between each class member and the Defendants, including whether and to what extent each alleged class member was allegedly overcharged." (Id. at p. 18). The Court finds this motion premature.

---

[3] This result applies equally to Plaintiff's UTPCPL claims against both Equity National and O'Donnell, even though O'Donnell's knowledge and participation in the allegedly tortious conduct is not clearly defined. The Court finds sufficient at the pleading stage Plaintiffs' allegations that O'Donnell, as company President, "personally and actively participated in the establishment by Equity National of a company policy of charging a fee for notary public service higher than the statutory maximum" in violation of the UTPCPL. See Ortiz, 2024 WL 3522036, at *10 (Allowing UTPCPL claim against company president to survive motion to dismiss where the complaint alleged "no specific conduct against [the president] in personally charging fees for notary services, but assert[ed] that she participated in such conduct by nature of her role in the company"), citing Rosenberg v. Nassau Life & Annuity Co., 2022 WL 2718607, at *15 (E.D. Pa. July 13, 2022) (denying a motion to dismiss UTPCPL tort claims when "[t]he lack of specificity [was] related not to the fraud allegations themselves but rather to the division of responsibility and corporate structure of [d]efendants, which is presumably within [d[efendants' knowledge").

"While it is sometimes possible to decide the propriety of class certification from the face of the complaint ... the Supreme Court has emphasized that class certification is an evidentiary issue, and 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" Herrera v. JFK Med. Ctr. Ltd. P'ship, 648 Fed. Appx. 930, 934 (11th Cir. 2016), citing Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). After all, "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (internal quotation marks omitted).

The Third Circuit articulated its concern with premature class certification in Landsman & Funk PC v. Skinder–Strauss Associates, 640 F.3d 72 (3d Cir.2011). In Landsman, the Third Circuit disapproved of the district courts' premature class certification decision at the motion to dismiss stage when there had been no motion for class certification and no discovery. Id. at 93. The Court reasoned that such an early, uninformed evaluation of class certification in conjunction with a motion to dismiss did not comport with the "rigorous analysis" required to resolve every class certification question, noting thar:

> To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis." In doing so, a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" ... In most cases, some level of discovery is essential to such an evaluation."

Landsman, 640 F.3d at 93 (internal citations omitted).

Thus, district courts within the Third Circuit have typically concluded that motions to strike class action allegations filed before plaintiffs move for class certification are premature. See, e.g., Migyanko v. Kohl's Corp., 2020 WL 5798239 at *4 (W.D. Pa. Sept. 29, 2020); Austin v. Invention Submission Corp., 2020 WL 2771076, at *10 (W.D. Pa. Apr. 13,

2020), citing Gray v. BMW of North America, LLC, 22 F.Supp.3d 373, 386 (D.N.J. 2014) ("Because discovery is essential to determining whether a case can be maintained as a class action, a motion to strike that is filed before a plaintiff has moved to certify a class is premature"); Trunzo v. Citi Mortgage, 2018 WL 741422, at *4 (W.D. Pa 2018); DiFlavis v. Choice Hotel Int'l, Inc., 2019 WL 1505860, at *7 (E.D. Pa. Apr. 5, 2019); Mills v. Serv. First Credit Union, 2011 WL 3236313 (M.D.Pa. July 28, 2011).

Particularly relevant to this Court's consideration is the fact that the arguments asserted by Defendants here have recently been raised and rejected as premature at the pleading stage by our sister courts within the context of substantially similar litigation. See Seplow, 2024 WL 649260, at *6 (finding motion to dismiss class allegations premature at the motion to dismiss stage when discovery could reveal the viability the viability of class claims of unjust enrichment and UTPCPL violations); Ortiz, 2024 WL 3522036, at *11 (same).

Because the Court finds that Plaintiffs have reasonably satisfied the class action prerequisites of numerosity, commonality, typicality, adequacy, and predominance at the pleading stage, the Court is loath to strike Plaintiffs' class allegations before allowing class discovery, the opportunity to amend, and, ultimately, the filing of a motion for class certification, if Plaintiffs so choose. Thus, Defendants' motion to strike class action allegations will be denied, without prejudice to Defendants' right to object to Plaintiffs' class certification at the appropriate time.

An appropriate Order follows.